In the matter of the Estate of EDWARD G. IRWIN, deceased, IONA B. CONKEY, formerly IONA B. IRWIN, Appellant, v. JAMES H. IRWIN and MARGARETE IRWIN.

Estates of decedents: PRESUMPTION AS TO OWNERSHIP OF PROPERTY: ACCOUNTING BY ADMINISTRATOR. Where the widow is unable to identify property, claimed by her as having been brought to her husband's farm at the time of their marriage and under his control thereafter, the presumption obtains that the husband owned the property in his possession at the time of his death, and the same should be inventoried as a part of his estate.

Same: EXEMPTIONS TO WIDOW. Upon the death of a husband the widow may have his exempt property set apart to her, including sufficient feed for the exempt animals for six months; and where there was no evidence that the amount of feed inventoried as exempt was in excess of that required to keep the exempt stock for that time she should not be required to account as administratrix for any part of the same.

Same: CLAIMS. A claim by the widow as administratrix for the keeping of stock belonging to the estate, with no showing of the expense incident thereto, should not be allowed.

Same: COMPLETION OF DECEDENT'S LAND CONTRACT: ACCOUNTING TO HEIRS. It appears in this proceeding that decedent left a widow but no issue, and that his parents prior to his death advanced to him a certain sum of money, a portion of which the widow as administratrix applied upon an *ex parte* order of court to the payment of land situated in another state and purchased by him under contract with one not shown to be the owner so as to be enforcible, and that she took the title in the name of decedent. Under the law of the state where the land was located the widow was entitled to the whole estate, while in this state she takes but

one-half and the heirs of the estate take the remainder. *Held*, that she was chargeable as administratrix with the amount diverted by her to the purchase, or, in lieu thereof that she might convey to his parents as heirs an undivided one-half interest therein.

Weaver and Deemer, JJ., dissenting.

*Appeal from Black Hawk District Court.*—HON. F. C. PLATT, Judge.

WEDNESDAY, MAY 3, 1911.

UPON the death of Edward G. Irwin, without issue, Iona B. Irwin, his widow, was appointed administratrix of the estate, and on August 20, 1909, filed final report. To this James H. Irwin and Margarete Irwin, parents of decedent, filed objections. These were sustained in part and the administratrix ordered to report accordingly within fifteen days. She appeals. *Modified* and *remanded.*

*Meyers & Spies,* for appellant.

*Courtright & Arbuckle,* for appellees.

LADD, J.—Upon the death of Edward G. Irwin, without issue, the widow surviving was appointed administratrix, and to her final report as such the parents of decedent interposed objections. The decedent was a farmer, and among the objections to the report was one that the administratrix had omitted to inventory several head of cattle and horses.

At the time of his death, there were nine cows, five two-year-old heifers, and other cattle. She inventoried but four cows and three of the heifers, and the court held her to account for three cows and two heifers in

1. ESTATES OF DE-
CEDENTS: pre-
sumption as to
ownership of
property: ac-
counting by
administrator.

addition thereto. Her explanation of the omission was that when married, about ten years previous, her parents gave her two cows and two calves, and she testified that she raised the calves, and when the cows became older sold

them "and kept other cows that were coming on," and, in answer to questions concerning cattle belonging to her, said, "I don't know how many head of cows there were, until I count up; I guess five head of cows," and as a clincher stated that she had inventoried all that belonged to her husband. The husband actively managed the farm, and all the stock was kept together. The administratrix did not undertake to identify any of it, nor did she testify what was done with the increase, if any, of the cows and calves given her. The two cows had been sold. The calves may have remained, and, in the absence of any evidence that those in controversy were their increase or that of cows given her, the presumption that the husband owned the personal property in his possession must prevail. The record sustains the order. There were four horses and a colt. Two of the horses were not inventoried. One of those belonged to the administratrix, and the court rightly held her to account for the other. She may have had another team at one time. As to this, the record is confused, but it is clear therefrom that only one of those on hand belonged to the wife.

The evidence disclosed that decedent left seven hundred bushels of corn. Of this two hundred and fifty bushels were inventoried and appraised as exempt to the widow and three hundred and fifty bushels as part of the general assets. She was required to account for three hundred and fifty bushels in addition to that last mentioned. This must have been on the theory that she was not entitled to that set apart to her as widow. Under section 4008 of the Code, there is exempt to a debtor, who is the head of a family, enough food to feed the animals declared exempt for six months, and by section 3312 the widow, upon the death of her husband, is entitled to have the animals exempt to the husband, and such food set apart to her. No evidence was adduced that the amount of corn was in excess of what was required to

2. SAME: exemptions to widow.

feed two horses, two cows, two calves, and five hogs during the time specified, and we think the court erred in ordering the administratrix to account for more than one hundred bushels of corn, not previously inventoried.

Administratrix asked for an allowance of $150 for attorney's fees. No evidence of the services rendered by attorneys or the value thereof was adduced. The court may have based the finding on knowledge of what had been done. The record disclosed no error in reducing the amount to $75.

The administratrix included a charge of $66 for keeping the colt. There was no showing of the value of keeping it, and for this reason the item was 3. SAME: claims. rightly rejected. Probably this may be adjusted by allowing the widow to retain the animal at its value at the time appraised.

Other items are not criticised, save a charge of $1,750. It appeared that the parents of decedent had given him $2,500 shortly before his death, and that on March 27, 4. SAME: completion of decedent's land contract: accounting to heirs. 1908, he had contracted with L. S. Boyer for the purchase of a quarter section of land in Kansas; the conditions being expressed in the contract as follows:

The party of the first part has this day sold to the party of the second part 'the described land' for the sum of $1,800. The party of the first part agrees to send abstract to said land to the party of the second part at his address at Waterloo, Iowa, for inspection by attorney, and in case said abstract is found to convey a merchantable title he agrees to make a warranty deed to said party of the second part by and from Bertie M. Rathburn, in whom the title at the present stands. The party of the second part agrees to leave a check drawn upon the Commercial National Bank at Waterloo, Iowa, for the sum of $50, with the First National Bank of Scott City, Kan., to bind this deal, and in case said abstract is found to convey a good title, the party of the second part agrees to promptly forward the sum of $1,750 by bank draft to the First National

Bank of Scott City, Kan., the whole of $1,800, to wit, the check for $50 to be turned over to party of the first part by the said First National Bank upon the presentation of a warranty deed made by Bertie M. Rathburn to the party of the second part.

The contract was signed by decedent and Boyer and witnessed by "B. M. Rathburn." Decedent had deposited the check of $50 with the bank, and upon his return to this state purchased a draft for the required amount, payable to the bank as stipulated, but was taken sick, and, though directing his wife to forward it, he died before this was done. Upon being appointed administratrix, she, without notice to the heirs, applied to the court for an order directing her to turn the draft over to the bank upon delivery to her of a warranty deed conveying the land, and the court so ordered, requiring title to be taken in the name of decedent. She did so, and the main controversy on this appeal is whether the court rightly ruled that this $1,750 should be charged to her in the final report.

Under the statutes of Kansas, "If the intestate leave no issue, the whole of his (the husband's) estate shall go to his wife." Section 2953, Gen. St. Kan. 1909; *Brown v. Belmarde,* 3 Kan. 41. Such estate, then, as he had in Kansas descended to the widow. If he left any estate there, it must have been an interest in the land covered by the contract. According to that instrument, he had paid nothing thereon to the owner nor to Boyer, if he was agent of the owner. Nor had he entered into a contract with the owner for the purchase of the land. His contract was with Boyer, and whether he was authorized by Bertie M. Rathburn to agree that she would make a warranty deed to decedent does not appear in the instrument itself, nor from evidence *aliunde.* The consideration was to be paid the bank, not the owner, and, insofar as the record discloses, the owner never undertook to convey the land. Possibly she had authorized such an agreement, but no proof thereof was

adduced, and, in the absence of anything to indicate the contract was enforceable, it ought not to be held to have passed any interest in the land. That such was not the intention is indicated by the exaction that the check and draft were to be left at the bank only upon the presentation of a warranty deed by the owner. Undoubtedly decedent acquired the right to purchase, if the owner should conclude to sell; but neither the contract nor this record bears any evidence that it was binding on the owner. If not binding, it passed no interest in the land, and amounted to no more than an option, so far as the owner was concerned. See *Meyers v. Stone,* 128 Iowa, 10.

No election by the owner to sell appears to have been made prior to the death of decedent, so that the widow could have taken nothing under the Kansas statute. But, as administratrix, she forwarded the draft purchased by decedent and procured the conveyance of the land in his name, and this was with the approval of the court. Section 3354 of the Code provides that the administratrix may, with the approval of the court, use funds belonging to the estate to purchase lands ":claimed or contracted for by him prior to his death." Undoubtedly he had contracted for this land, and the purchase was within the terms of the statute. Whether Boyer might have presented an abstract and warranty deed, such as described in the agreement, and maintained a claim against the estate for the entire purchase price, or must have been content with damages merely, is doubtful in view of the circumstances. But this is not material, inasmuch as the administratrix carried out the contract for the purchase of the land. The statute authorizing this does not determine for whose benefit such purchases shall be made. This may be done for the benefit of a devisee, where he takes the particular tract, and is ordinarily for the benefit of those who inherit the land. In this state, where there is no issue, the widow takes one-half and the heirs of the deceased husband the other half

of the latter's estate, so that, but for the diversion of the draft for the purchase of the Kansas land, the objectors would have inherited one-half thereof. This was employed to buy land outside of the state, on a contract in which neither the administrator nor widow and heirs had an enforceable interest, and we think the property acquired in the settlement of the estate should be apportioned precisely as though it were the money invested therein. Doubtless the court, in directing that title be taken in the decedent's name, acted on the assumption that the laws of Kansas were like those of this state, and for this reason ordered that title be taken in the name of deceased, instead of exacting that title be taken in the name of the widow and heirs, according to their respective interests in the property out of which the purchase was made. Had the contract been such as passed such an interest in the land as that the widow took the same under the laws of Kansas, a different question would have been presented, and we express no opinion as to whether, in that event, she would have been entitled to have had the land exonerated from the debt from the personal estate. As the title as taken stands in the name of the decedent, the widow likely will be regarded by the courts of Kansas as the sole owner. As said, we think the title should have been taken in the names of her and the heirs, and if she cares to convey to the objectors an undivided half interest therein, clear of incumbrance, she should be permitted to do so in lieu of the $1,750 charged to her in the final settlement. Otherwise the order of the court as entered will stand.

The case is remanded for judgment in harmony with this opinion.—*Modified* and *remanded*.

WEAVER, J.—I dissent from the conclusion announced as to the item of $1,750. In my judgment, the ruling of the trial court in this respect should be reversed.

DEEMER, J.—I concur in the dissent of Mr. Justice Weaver. The owner of the land ratified the sale, and this was the equivalent of prior express authority. The widow should not be charged with any part of the purchase price. The land having been paid for, the widow was entitled to it under the Kansas statutes.