DORA B. VEEDER, Appellee, v. JOSEPH VEEDER et al., Appellants.

**HUSBAND AND WIFE:** Antenuptial Contracts—Failure of Consideration. A wife who seeks to enforce property rights under an antenuptial contract must show that she has fulfilled her part of the

marriage relation. Should it appear that, shortly after the marriage, she refused to live with her husband, she must justify such refusal by testimony which would have given her a decree of divorce.

**EXECUTORS AND ADMINISTRATORS:** Allowance to Surviving
2   Spouse—Antenuptial Contracts. An antenuptial contract which distinctly specifies what share of the husband's property shall fall to the wife in case of the predecease of the husband is no obstacle to the granting of a year's allowance to the surviving wife for her support.

*Appeal from Wright District Court.*—H. E. FRY, Judge.

MARCH 13, 1923.

THREE actions are consolidated for trial in this proceeding. One is an action in partition, another is an application for a widow's allowance, and the third is the application of an executor for an order to sell the real estate of a decedent, to pay debts. The trial court granted a decree of partition of the real estate, as prayed, awarded the widow an allowance of $360, and authorized and directed the executor to sell the real estate of the decedent to pay the debts. The facts more fully appear in the opinion.—*Affirmed in part; reversed in part.*

*Ladd & Rogers* and *Healy, Thomas & Healy,* for appellants.

*W. E. Bullard* and *Sylvester Flynn,* for appellee.

FAVILLE, J.—I.   We first consider the action in partition. This suit was brought by the surviving widow of one Fred C. Veeder, who died January 26, 1921. Said decedent left surviving him his said widow and five sons, all children of a former marriage. Decedent and the appellee were married on January 27, 1916. Each had been previously married, and the appellee had one child by the former marriage. Prior to the marriage of said parties, the appellee had been employed as housekeeper for the defendant, and had lived in his home on a farm owned and occupied by him and his five sons, four of whom were adults at the time of his death. Prior to the marriage, the appellee and decedent entered into an antenuptial contract, as follows:

"This contract made and entered into by and between F. C. Veeder of Belmond, Iowa, as party of the first part, and Dora B. Lang of Belmond, Iowa, as party of the second part, witnesseth: That whereas, a marriage is intended to be solemnized between the said parties of the first and second part, the said F. C. Veeder, party of the first part, does hereby agree to and with the said Dora B. Lang, party of the second part, as follows: That upon the death of the said F. C. Veeder the said Dora B. Lang shall have of his estate as her full share and interest therein, the one sixth of all of the property and estate of the said F. C. Veeder at the time of his decease; and also it is further agreed and made a part of this agreement, that all life insurance on the life of the said F. C. Veeder shall be added to the value of all properties and interests of his said estate in making up the full amount of the estate of the said F. C. Veeder, and it is further agreed by and between the said parties hereto, that the said F. C. Veeder shall purchase a residence property in the town of Belmond, Iowa, and which property so purchased shall be by the said F. C. Veeder given to R. J. Lee and Nana C. Lee, the father and mother of the said Dora B. Lang, party of the second part, to be used by them for a home during their natural lives, or until the decease of the said F. C. Veeder, with the condition and agreement that in case the said R. J. Lee and Nana C. Lee shall accept of this offer, they, the said R. J. Lee and Nana C. Lee, shall keep up the ordinary repairs required to be made on the said dwelling house, shall keep the same insured in some responsible insurance company for at least one half of the actual value thereof, and shall pay all the taxes and assessments levied upon and against the said property before the same shall become delinquent; and this agreement and use of said property shall continue so long as the said Dora B. Lang shall live as the wife of the said F. C. Veeder, or until the death of the said F. C. Veeder; and it is further agreed that upon the death of the said F. C. Veeder, the said property shall be appraised and shall be accepted and received by the said Dora Lang at its valuation to apply on the one-sixth interest she is hereby made entitled to receive as her full share in the estate of the said F. C. Veeder; and the said Dora B. Lang, party of the second part, does hereby signify her assent and agreement to the provisions of this agree-

ment and does hereby covenant to and with the said F. C. Veeder, party of the first part, and the said Dora B. Lang, party of the second part, in consideration of the premises and in consideration of the sum of one dollar to her in hand paid, does for herself, her heirs, executors and administrators, covenant and agree with the said F. C. Veeder, party of the first part, that the interest so as above agreed to be set apart from the estate of the said party of the first part shall be in full satisfaction of all her rights in the said estate of the said F. C. Veeder, including all her distributive share or dower rights therein as his widow, and shall bar her from claiming the same if she shall survive the said F. C. Veeder after said marriage between them; and further that if. the said marriage shall be had and she shall survive him that she will not claim any other or different share or interest in the estate of the said F. C. Veeder than the one sixth thereof, as hereinabove provided, unless some part thereof shall be given to her by his will, or some act done by him subsequent to execution of these presents.''

This contract was duly executed and acknowledged by the parties the day preceding their marriage.

After the marriage, the appellee took up her home with the decedent and assumed the duties of a wife in said home. She had charge and care of the home and did the usual work of keeping a house, furnishing the meals, and doing the washing for the family, as farmers' wives ordinarily do.

About sixty days after the marriage, the appellee left the home of her husband and went to the home of her father, who resided in the town of Belmond, near where the farm was located. The decedent visited her there frequently, and finally persuaded her to return to the home on the farm and resume the marital relations, which she did on or about July 1st. She remained on the farm and continued to perform her duties as wife thereafter until the following August, when she again left the home of the decedent and never returned thereafter. In February, 1917, she instituted an action for divorce against the decedent, predicating the same on alleged grounds of cruel and inhuman treatment. The decedent appeared as defendant in said action, and resisted appellee's claim for divorce, and filed a cross-petition seeking a divorce from appellee on the charge

that her marriage to him was the result of conspiracy on her part to obtain his property, and that she had been guilty of such cruel and inhuman treatment as to impair his health and endanger his life.

The trial court denied the appellee a divorce, and granted a divorce to the decedent upon his cross-petition. The cause was appealed to this court, where the action of the lower court in denying the appellee herein a decree of divorce was affirmed, and the action of the lower court in granting a decree of divorce to the decedent was reversed. *Veeder v. Veeder,* 189 Iowa 912.

After the death of the decedent, the appellee instituted this action in partition, and as the issues were finally settled, appellee's contention is that she is entitled to an undivided one sixth of the property left by the said decedent, under the terms and provisions of the said antenuptial contract. The appellants' defense to this action is based upon the claim that the appellee breached the said antenuptial contract on her part by failing and refusing, without just cause, to perform the duties of a wife under the marriage contract, which marriage contract was the consideration for the antenuptial contract between the parties.

The record shows that the decedent lived five years, lacking one day, after the marriage, and during said period of time the appellee lived with him and maintained the relation of wife to him for an aggregate total of about 3½ months, or approximately 105 days.

An antenuptial contract of this character is valid, binding, and enforcible. *Jacobs v. Jacobs,* 42 Iowa 600; *Ditson v. Ditson,* 85 Iowa 276; *Peet v. Peet,* 81 Iowa 172; *Fisher v. Koontz,* 110 Iowa 498; *In re Estate of Mansfield,* 185 Iowa 339; *In re Estate of Thorman,* 162 Iowa 316; *Weis v. Bach,* 146 Iowa 320.

The first question for our consideration in this connection is: Assuming that the appellee failed to fulfill her duties as a wife under the marriage contract, did such failure on her part constitute such a breach of the antenuptial contract by her as precludes her from recovering under the terms and conditions of said antenuptial contract?

1. HUSBAND AND WIFE: antenuptial contracts: failure of consideration.

The rule of the English courts is that, where a marriage

settlement has been agreed upon between the parties, a woman does not forfeit her rights thereunder, even though she violates the marriage vows.

In *Seagrave v. Seagrave,* 13 Ves. Jr. 439 (33 Eng. Reprint 358), it was held that a woman did not forfeit her rights to the benefit of a marriage settlement, even though she were living separate from her husband, in a state of adultery.

In *Moore v. Moore,* 1 Atk. 272 (26 Eng. Reprint 174), it appeared that a wife had deserted her husband without just cause, and gone to a foreign country, and this was held not sufficient to excuse the husband from paying the annuities due the wife under a marriage settlement contract.

The same rule is recognized in *Sidney v. Sidney,* 3 P. W. 269 (24 Eng. Reprint 1060).

This rule of the English courts in respect to rights under a marriage settlement has not met with approval or adoption by the courts of the United States. Where parties enter into an antenuptial contract, each must perform the terms and provisions of that contract before such party can claim the benefits to be derived therefrom. In *In re Estate of Warner,* 6 Cal. App. 361 (92 Pac. 191), the court said:

"We think that, where a woman in an antenuptial contract releases all her rights in the property of her intended husband as his heir, in consideration of his doing certain things, if he fails to perform material covenants on his part, she may show this and still claim her rights as heir."

In *Mann v. Mann's Estate,* 53 Vt. 48, 55, the court considered the claim under an antenuptial contract as though it were an action for specific performance, and said:

"It is essential that the party asking for the enforcement of the specific performance of a contract should be able to aver and establish a performance of the contract on his part, especially if his performance thereof forms the consideration for the covenants sought to be enforced."

In *Becker v. Becker,* 241 Ill. 423 (89 N. E. 737), the court considered an antenuptial contract by which a husband agreed to keep up the insurance on his life for the benefit of his wife, and the contract provided that he should have certain rights in her property if he survived her. He failed to keep up the in-

surance on his life, as the contract provided. The court held
that his failure to keep up the life insurance, as required by
the antenuptial contract, defeated his claim to a right in his
wife's property under the contract, and held that in such case
the burden rested upon him to show that he had performed the
contract on his part.

In *New Jersey Title Guar. & Tr. Co. v. Parker*, 85 N. J.
Eq. 557 (96 Atl. 574), the court considered a case where it ap-
peared that there was an antenuptial contract by which the
husband agreed that one third of the income of certain securi-
ties owned by him should go to the wife after the marriage, and
that at his death the entire lot of securities should go to her.
The wife left the husband when they were in Florence, Italy,
and came to the United States, and continued to absent herself
from the husband, and finally obtained a divorce from him in
the state of Missouri, and married another man. After the death
of the first husband, the woman claimed the securities in ques-
tion by virtue of the antenuptial contract. The court said:

"The appellant seeks to have the antenuptial contract
treated as if it were transformed into a unilateral undertaking
by the husband immediately after the marriage ceremony was
performed. The argument made by the appellant is that, so far
as Mrs. Junkin was concerned, she performed her part of the
contract when she married the testator, and, upon the happening
of that event, she became entitled to the benefit of the contrac-
tual provisions in her favor. Carrying out this proposition to
its logical sequence, it amounts to this: That, as soon as the
marriage ceremony was performed, Mrs. Junkin became in law
the wife of Mr. Parker, the testator, and therefore had the
option to turn away from him the next moment thereafter and
refuse to live with him; for, according to her theory, the insist-
ence is that, by marrying Mr. Parker, she had fully performed
her undertaking, her marriage to him being the basis and con-
sideration for her intended husband's undertaking, and there-
fore he was irrevocably bound to carry out the provisions of
the antenuptial contract. But a plain reading of the contract
forbids any such construction of it. The husband did not set-
tle absolutely his property on his wife. The settlement he made
was a conditional one. A situation is, therefore, presented here

different from the case where the provisions of the marriage set-
tlement have been fully executed. By the terms of the contract,
Katherine Bailey was to become Henry M. Parker's wife, not
for so long a time as it pleased her to remain his wife, but dur-
ing the term of her natural life, unless he predeceased her.''

The court in that case further said:

''Bearing in mind that the marriage of Mrs. Junkin to
Mr. Parker was only a part performance by her of her obliga-
tion under the antenuptial agreement, and that the marriage
itself imported reciprocal duties on part of the husband and
wife, at least to this extent, that she should remain his wife,
the burden was cast upon her to show that the separation from
him and·dissolution of the marriage whereby she ceased to be
his wife was due to his conduct. For the undertaking of the
husband by which she was to receive the benefits mentioned in
the antenuptial agreement, read in the light of its natural mean-
ing, was, as has already been pointed out, not only that she
should become his wife, but that she should remain such, and,
in case of his death, take as his widow. * * * It was incumbent
upon her to show, in order to entitle her to the benefit of the
provisions of the antenuptial agreement, that she had in good
faith performed her part of the marital obligations arising out
of the marriage, or was prevented from so doing by the testa-
tor's act.''

This question was before this court in the case of *York v.*
*Ferner*, 59 Iowa 487. This was an action brought by a sur-
viving widow to recover from the estate of her deceased hus-
band under the terms and provisions of an antenuptial contract.
The answer alleged that, after the marriage, the plaintiff re-
sided with her husband but seven weeks and three days, and
did desert and abandon him without cause, and although re-
quested to do so, refused to return to his house and discharge
the duties of a wife. The wife alleged that she was justified in
leaving her husband because of his drunkenness, but the proof
clearly showed that his habits in this respect were the same be-
fore the marriage as afterward.

In considering said case, we said:

''The contract of marriage between a man and a woman
always contemplates that the parties shall live together as hus-

band and wife as long as the marriage relations shall exist, subject, of course, to such absence from one another or separation as may be agreed upon or may be justified by the law. But while the marriage relation exists, each has a right to the society and service of the other, and if these be refused, the marriage rights and duties are thereby disregarded and violated. But there are causes which, in law, justify a married man or woman in abandoning his or her spouse. These causes are such as will authorize by divorce the dissolution of the marriage contract. It cannot be claimed that a woman discharges the duties and obligations of a wife who, without cause which in law would authorize a divorce upon her application, lives apart from her husband without his consent. The law in some cases may grant to her the right to live separately from her husband when she is the injured party. But in such a case the law, upon her application, would annul the marriage. * * * The antenuptial contract was based upon the contemplated marriage, whereby plaintiff became bound to discharge the duties of a wife. Surely, such a contract cannot be enforced by the wife who, after the marriage, abandons her husband without lawful cause. The consideration of the instrument is the marriage contract; if it be broken and violated, the antenuptial contract cannot be enforced. It would be monstrous to hold that a woman could collect an annuity settled upon her by a contract in contemplation of marriage, when, after the marriage, without cause, she utterly refused to live with her husband longer than seven weeks and three days. This is the precise case before us. Our conclusions, we think, are supported by legal principles and sound reason."

We are not disposed to depart from the rule announced in the *York* case, which, we believe, is supported by legal principles, sound reason, and the greater weight of authority. The appellee in this case is in the position of one seeking to enforce specific performance of a contract; and in order for her to do so, it is incumbent upon her to establish performance of the contract on her part or to prove legal and sufficient reasons for her failure so to do. As pointed out by the Court of Errors and Appeals of New Jersey, in the *Parker* case, supra, the appellee did not perform the contract on her part merely by marriage

to her husband. She undertook to become a wife to him in all of the duties which that relation requires, and that she should remain such during his life and receive the benefits of the antenuptial contract after his death as his widow. The burden rested upon her to show "that she had in good faith performed her part of the marital obligations arising out of the marriage, or was prevented from so doing by the testator's act."

Did the appellee carry this burden in the instant case? She not only failed to prove that she did perform the duties of a wife during the life of the decedent, but the undisputed evidence establishes the fact that she lived with him as his wife but 105 days out of the five years' time that intervened between the marriage and the death of the husband. So the question arises, Did the appellee sustain the burden resting upon her to establish that her failure to perform the contract on her part was due to the acts and conduct of the decedent? We think that the appellee failed to establish that her failure to perform the duties which the marriage relation imposed upon her was due to acts and conduct on the part of the decedent that released her from such obligation. There is evidence offered in her behalf tending to sustain her claim that the decedent was guilty of cruel and inhuman treatment that justified her in leaving his home and in refusing to perform her wifely duties. It is obvious that no slight or trivial disagreement or misunderstanding between the parties would justify the appellee in repudiating the obligation resting upon her to perform the duties of the marriage contract on her part. It may well be said that nothing short of conduct which the law recognizes as sufficient grounds for a divorce would release the appellee from the performance of her contract. The evidence offered by the appellee to sustain her claim that she was relieved from performing the contract on her part because of the cruel and inhuman treatment afforded her by her husband is, in our judgment, insufficient to sustain her claim or to establish such cruel and inhuman treatment as justified her in leaving her husband's home and abandoning the contract she had undertaken to perform.

The evidence discloses that the appellee brought an action against her husband to obtain a divorce from him on the ground of cruel and inhuman treatment; that her application for di-

vorce was denied by the trial court; and that, on appeal to this court, the decree of the trial court was affirmed in this regard. It is contended by the appellee that the decision in that case does not constitute *res adjudicata* in the present action between the widow and the heirs of said decedent. For the purposes of this case, it is not necessary that we determine whether such decree has the conclusive and binding effect of an adjudication of the rights of the parties, and therefore we do not pass upon that question.

A careful examination of the record satisfies us that appellee failed to carry the burden resting upon her of showing that her failure to perform the contract on her part was caused by any act or conduct on the part of the decedent which legally justified her in refusing to so perform the contract. We therefore hold, on this branch of the case, that the trial court was in error in decreeing that the appellee was entitled, under the antenuptial contract, to an undivided one-sixth interest in the estate of the said decedent; and the decree of partition awarding her a share in the property of the decedent, as prayed, must be, and it is, reversed.

II. The lower court allowed the appellee $360 as her widow's allowance for one year, under the statute.

Code Section 3314 provides for such an allowance. We have held that a widow's allowance for a year's support is one of the expenses of administration of the estate, and is not defeated by an antenuptial contract. *In re Estate of Johnson,* 154 Iowa 118; *In re Estate of Miller,* 143 Iowa 120; *In re Estate of Uker,* 154 Iowa 428. For our latest pronouncement on this question, see *Caldwell v. Caldwell,* 192 Iowa 1157. The writer of this opinion still adheres to the views expressed in the special concurrence in said case.

2. EXECUTORS AND ADMINISTRATORS: allowance to surviving spouse: antenuptial contracts.

In the light of our previous decisions, we now hold that the appellee, being legally the widow of the decedent, was entitled, upon proper showing, to an allowance for her support for the period of one year from the death of the decedent. The amount allowed by the court was not excessive or improper, and the decree and order of the trial court in making an allowance to the widow for her support for one year, and directing pay-

ment of the same out of the proceeds of the estate of the decedent, is affirmed.

III. No contention is made in this court that the decree of the trial court in directing the executor to sell the real estate of the decedent for the purpose of paying debts was erroneous, and it will, therefore, be affirmed.

Separate decrees were entered by the district court in each of the three cases which are consolidated in the submission in this court. The decree in the action for partition is reversed. The order granting an allowance to the widow for support and the order directing the executor to sell the real estate of the decedent to pay debts are each affirmed. The costs of this appeal will be taxed one third to the appellants and two thirds to the appellee.—*Affirmed in part; reversed in part.*

PRESTON, C. J., EVANS and ARTHUR, JJ., concur.