In the Matter of the ESTATE of Truman H. TOLLEFSRUD, Deceased.

Gerald C. TOLLEFSRUD and James Burns, Co-Executors of the Estate of Truman H. Tollefsrud, Deceased, Appellants,

v.

Arlene G. TOLLEFSRUD, Appellee.

Arlene G. TOLLEFSRUD, Appellant and Cross-Appellee,

v.

Gerald C. TOLLEFSRUD and James Burns, Fiduciaries of the Estate of Truman H. Tollefsrud, Deceased, Appellees and Cross-Appellants.

Nos. 61574, 62035.

Supreme Court of Iowa.

Feb. 21, 1979.

Donald H. Gloe, of Miller, Pearson, Gloe & Burns, Decorah, for Executors of Estate of Truman H. Tollefsrud, Deceased.

Lance P. Lorentzen, of Meyer, Zahasky & Lorentzen, Decorah, for claimant Arlene G. Tollefsrud.

REES, Justice.

We are concerned in this matter with two separate appeals, both emanating from the probate proceedings in the Estate of Truman H. Tollefsrud, deceased, pending in Winneshiek County. The widow, Arlene G. Tollefsrud, and the executors of the decedent's estate, Gerald C. Tollefsrud and James Burns, appeal from several rulings of

the trial court. The executors appeal from the order of the trial court granting Arlene Tollefsrud's application for allowance to her as the surviving spouse under § 633.374, The Code. Arlene Tollefsrud appeals from the trial court's denial of her claim against the estate, based upon a $14,000 promissory note, executed by both the decedent and the claimant, to the claimant. It was secured by a mortgage upon the home of the parties which Arlene took as a surviving joint tenant. The executors cross-appeal from the court's award to the surviving spouse of one-half of the balance due on another mortgage loan and one-half of the real estate taxes due on the property which passed to Arlene as the surviving joint tenant. The executors also cross-appeal from the trial court's award to claimant of certain household goods allegedly in the decedent's estate, asserting the evidence failed to show the claimant's ownership of the items in question.

The factual development of the issues is important to a complete understanding of the conflicting claims of the parties. Therefore, the background of the case will be discussed preliminarily to the discussion of the procedural aspects.

Truman and Arlene Tollefsrud were married in March of 1971, and on July 24, 1973, they purchased a home in Decorah as joint tenants, executing a note and mortgage to a savings and loan association to obtain financing for the home. In August of the same year, they paid $14,000 to reduce the principal of the mortgage, the money coming from the proceeds of the sale of Arlene's former home, which she had owned prior to the marriage. On February 21, 1974, Truman and Arlene executed a promissory note to Arlene for $14,000 payable on demand, in acknowledgment of the August payment. The note was secured by a second mortgage on the couple's home, which was also executed by Truman and Arlene to Arlene as mortgagee. There was testimony to the effect that the purpose of the instruments was to provide security for Arlene and that she was advised by Truman's attorney to sign the documents "to release her dower interest".

In February of 1977, Truman and Arlene separated. Arlene moved from the couple's home and filed a petition for dissolution of marriage on February 13, 1977. On February 23, Truman executed a will devising no property to Arlene. While the dissolution action was pending, Truman died on July 11, 1977. By virtue of the joint tenancy seisin the home passed to Arlene; at that time the balance due on the first mortgage running to the savings and loan association was $4,599, and the promissory note running in her favor in the principal amount of $14,000 remained unpaid. Also, at the time of Truman's death, taxes on the house were due in the amount of $721, payable in installments in 1977 and 1978. Arlene, who had not lived in the house since February, made occasional use of the home on weekends and paid a portion of the utility bills incurred. She took full possession of the home in July of 1977.

On July 18, 1977, Gerald Tollefsrud and James Burns were appointed executors of Truman's estate, and the will was admitted to probate. Arlene filed an election to take against the will. On August 5 she filed an application for allowance as the surviving spouse pursuant to § 633.374. The executors filed a resistance to the application, and on December 29, 1977, the trial court, Judge Joseph C. Keefe, granted Arlene's application and awarded to her the sum of $200 per month for the period of 12 months. Later Judge Keefe in conformity with rule 3, Rules of Appellate Procedure, certified that appeal to this court should be allowed from this order, and the first appeal with which we are concerned here ensued.

From the time of separation until Truman's death, Arlene had not filed an application for temporary support and Truman had not provided any voluntary support. As of Truman's death, Arlene worked full time as a teller, earning $6100 annually. It was stipulated that she would work only part time in 1978. The probate inventory of Truman's estate shows a gross taxable estate of $122,469.

The second appeal arising from the Tollefsrud estate involves the disposition of certain claims against the estate, and property claimed by Arlene as surviving spouse. On August 5, 1977, Arlene Tollefsrud filed three claims in probate against the estate, requesting: (1) the $14,000 due on the promissory note; (2) one-half of the balance due on the first mortgage; and (3) one-half of the property taxes due at the time of decedent's death. All of the claims were resisted by the executors, and following hearing the trial court, Judge Frank D. Elwood, denied the claim based on the promissory note and allowed Arlene's other claims.

Further, on August 5, Arlene applied to set off certain personal property owned by her prior to the marriage, which application was later amended to include other items of property whose ownership was disputed, the latter items having been received by the parties as joint gifts or purchased by funds from the couple's joint checking account, allegedly by Arlene. In its order of April 19, 1978, the district court awarded certain of the disputed items to Arlene and the others to the estate. From the April 19 ruling, Arlene appealed and the executors cross-appealed, Arlene from the disallowance of her claim for the $14,000 based on the promissory note, and the executors from the allowance of the claims for contribution regarding the first mortgage, the property taxes and the court's disposition of the disputed property. Arlene does not contest the ruling of the trial court awarding certain items of the disputed property to the estate.

On the joint motion of the parties, we ordered the appeals consolidated for submission.

The following issues are presented by the appeals:

(1) Did the trial court abuse its discretion in awarding $200 per month for a period of 12 months to Arlene Tollefsrud as surviving spouse, when the claimant and the decedent were separated and an action for dissolution of marriage was pending at the time of decedent's death?

(2) Did the trial court retain jurisdiction to rule on the claims in probate after a notice of appeal had been filed from the award of the allowance to the claimant as surviving spouse?

(3) Did the trial court err in denying the claim in probate of the surviving spouse based upon the $14,000 promissory note running in her favor signed by the decedent and the claimant, and secured by a mortgage also signed by the decedent and the claimant, on real estate which later passed to the claimant as surviving joint tenant upon the death of the decedent?

(4) Did the trial court err in allowing the claims of the surviving spouse for one-half the remaining balance due on a mortgage loan and for one-half of the real estate taxes on property which the claimant later took as surviving joint tenant?

(5) When prior to the husband's death the claimant and decedent were separated and certain goods remained in the husband's possession during the period of separation, did the trial court err in awarding such items to the claimant when many of them were joint gifts or purchased from joint funds?

■ I. We must first determine whether the trial court abused its discretion in ordering an allowance to the surviving spouse from the assets of the estate. If there is a basis in the record for the action of the district court, we will not find an abuse of discretion. The executors contend that any award above a nominal one is excessive under these circumstances, and that the award of $200 per month constitutes an abuse of discretion. We do not agree.

■ It is conceded by the parties that we have held a surviving spouse to be entitled to an allowance as a matter of right despite the separation of the parties and the filing of a petition for divorce or dissolution. *In Re Quinn's Estate,* 243 Iowa 1271, 55 N.W.2d 175; *Veeder v. Veeder,* 195 Iowa 587, 192 N.W. 409. The executors' initial contention is that an award to the claimant

is inconsistent with the purpose behind § 633.374: " . . . to support the surviving widow for a period of 12 months in the position occupied by herself and husband and in keeping with the manner in which the family lived prior to the husband's death." *In Re the Estate of McClellan,* 187 Iowa 866, 174 N.W. 691, 692 (1919). See also *Matter of Estate of Allen,* 239 N.W.2d 163, 170–171 (Iowa 1976). Since the parties were separated at the time of Truman's death and Arlene was not at that time receiving any support from Truman, and had not been receiving any during the five-month period of separation, the executors contend Arlene should not have been granted an allowance.

■ In relevant part, § 633.374, The Code, states that the surviving spouse shall be provided such funds of the estate as the court deems sufficient and reasonable "for the proper support of the surviving spouse for the period of twelve months following the death of the decedent". The same section also includes a statement of relevant factors: "The court shall take into consideration the station in life of the surviving spouse and the assets and condition of the estate". The language of the statute is prospective in nature, focusing on the needs of the surviving spouse in the coming twelve months. While the circumstances of the parties immediately preceding the death of the decedent are indeed relevant to a determination of the amount of the allowance, when a future need is shown the fact that decedent had not provided support for the five months before his death should not preclude the award of an allowance under § 633.374. We doubt that the court in *McClellan* meant to bind the parties to the precise conditions existing at decedent's death, but rather was looking to a general continuity of the standard of living of the surviving spouse.

■ An examination of the evidence before the court indicates to us that $200 per month is a reasonable allowance for the surviving spouse under § 633.374. Although she had not been receiving monetary support from the decedent during the five months preceding his death, Arlene held employment which yielded $6,100 per year, and would be moving from full time to part time status in her employment during 1978 with a corresponding decrease in remuneration anticipated. The preliminary report of the estate shows a total gross value of $122,469.42. On the evidence so presented, it is clear the trial court did not abuse its discretion in allowing Arlene $200 per month for future support purposes, there being a more than adequate basis for allowance in the evidence and a slight diminution in the total value of the estate.

■ The executors next challenge the award of a support allowance in this case by asserting that we should overrule our holding in *In Re Quinn's Estate,* supra, and *Veeder v. Veeder,* supra, and hold that when a widow was not receiving any support from the decedent at the time of his death, and the parties were separated and a dissolution action pending at that time, she is not a surviving spouse within the meaning of § 633.374. They argue that since both *Veeder* and *Quinn* relied partially on the rationale that to preclude the widow from taking the statutory allowance would require an adjudication of the fault issue then inherent in divorce actions, the viability of the rationale, and thus the decisions of this court, has been mitigated by the fact that fault is no longer an issue under Iowa's dissolution law. *In Re Marriage of Williams,* 199 N.W.2d 339 (Iowa 1972).

In a narrow sense, the contention of the executors has some merit. A broader reading of the holdings of the challenged decisions causes us to conclude that to deny the widow the allowance would, in effect, be an adjudication on the merits of the once-pending divorce or dissolution proceedings. A denial of surviving spouse status would be synonymous with the entry of a divorce or dissolution order in a matter which was only pending, the merits of which will never be reached due to the death of one of the parties. Legally, the couple remained husband and wife until the effective date of a decree of divorce or dissolution.

Courts of other jurisdictions, when faced with similar situations, have reached conclusions supportive of the *Veeder* and *Quinn* decisions, *In Re Estate of Bassett,* 189 Neb. 206, 201 N.W.2d 848, 851; *Knowles v. Knowles,* 125 Ga.App. 642, 188 S.E.2d 800, 804. When a different result has been reached, the courts have relied upon extended periods of separation, involving a number of years during which the parties were economically self sufficient, in denying the statutory allowance. *In Re Estate of Jankewicz,* 29 Wis.2d 713, 139 N.W.2d 662, 667; *In Re Fallon's Estate,* 49 Cal.2d 402, 317 P.2d 963, 964. In *Fallon,* at pages 964–965, the California Supreme Court said:

"Nor is the right ordinarily lost merely because the spouses were living apart at the time that the husband died or because the wife had been supporting herself without financial aid from the husband."

The relatively short separation of the parties in the matter before us here is persuasive in our determination not to consider an exception to the rule established in *Veeder* and *Quinn,* supra.

The recognition of the *Veeder* and *Quinn* rationale is further supported by the current law on dissolution, § 598.16, regarding conciliation. To find that the filing of a petition for dissolution disqualifies a person from enjoying surviving spouse status under § 633.374 would in effect denigrate the possibility of conciliation between the parties, the process for which is provided in § 598.16.

We hold that the separation of the parties and the filing of a dissolution petition prior to decedent's death does not disqualify a surviving spouse from eligibility for a support allowance authorized by § 633.374. We find the claimant was properly awarded such an allowance and that the trial court did not abuse its discretion in ordering such an award.

■ II. Although not directly argued by the parties, there is a jurisdictional question regarding action concerning the estate taken by the district court subsequent to the filing of the notice of appeal as to the court's ruling granting the allowance to surviving spouse; the other proceedings in the district court, subject matter of the second appeal, having taken place subsequent thereto. We have uniformly held that when a notice of appeal is filed, sole jurisdiction of the matter is placed in the appellate court, *Jones v. Jones,* 255 Iowa 103, 121 N.W.2d 668, 672 (1963); *McCauley v. Municipal Court of City of Des Moines,* 254 Iowa 1345, 121 N.W.2d 96 (1963), so long as the notice of appeal is timely, *McCleeary v. Wirtz,* 222 N.W.2d 409, 416 (Iowa 1974). Unless an exception is found, it would appear the district court lacked jurisdiction to proceed in the matter following the filing of the first notice of appeal, and that subsequent rulings and orders which are the subject of the second appeal herein, would be void.

Courts of other jurisdictions, when considering issues similar to that herein, have permitted further proceedings in the same case at the trial court level following appeal when the subject matter of appeal would not be affected by such proceedings. *Majnaric v. Majnaric,* 46 Ohio App.2d 157, 347 N.E.2d 552, 554; *Southland Corporation v. Village of Hoffman Estates,* 130 Ill. App.2d 311, 264 N.E.2d 451, 454–455; *Hunter v. Hunter,* 44 Wis.2d 618, 172 N.W.2d 167, 169; *Osborn v. Riley,* 331 So.2d 268, 271 (Ala.); *Blackmon v. Blackmon,* 525 S.W.2d 711, 713 (Texas Civ.App.); *Strauser v. Strauser,* 303 So.2d 663, 664 (Fla.App.). In such jurisdictions, the trial court is restrained from entering any order which would change or modify the judgment on appeal, and from entering any order which would have the effect of interfering with review of the judgment. The district or trial court retains jurisdiction to act on matters between the parties collateral to the subject matter of the appeal.

■ The application of the aforementioned exception in the matter before us here would facilitate the expedient processing of issues in proceedings, such as those in probate and domestic disputes, where diverse and non-interrelated questions may be involved. A court in probate unable to

dispose of disputed claims against an estate due to the appeal of a previous ruling on an unrelated claim would be disruptive of an effective judicial process. Such justification is compelling and calls for the adoption of the collateral matter exception regarding any transfer of jurisdiction by appeal. We hold a trial court retains jurisdiction to proceed as to issues collateral to and not affecting the subject matter of the appeal. While not foreclosing its operation in other appropriate settings, allowing the retention of jurisdiction over collateral matters by a trial court would be of greatest value in the probate and domestic relations settings.

■ Somewhat analogous support for this result is found in § 686.5, The Code, which states in relevant part:

"An appeal from . . . one of the judgments of a final adjudication, or from part of a judgment, shall not disturb, delay, or affect the rights of any party to any judgment or order, or part of a judgment or order, not appealed from."

As an appeal should not disturb that portion of a judgment not appealed from, so should an appeal not disrupt the district court jurisdiction over questions unrelated to the appeal.

Accordingly, we turn to a consideration of the matters involved in the second appeal.

III. The claimant, Arlene, asserts the district court erred in denying her claim for $14,000 based on the promissory note, executed by Truman and Arlene in Arlene's favor, and secured by a mortgage on real property which she later took as surviving joint tenant. The trial court cited essentially equitable reasons in reaching its decision; noting that Truman's purpose in executing the note and mortgage was to provide "security" for Arlene who was then his wife, and that this was accomplished when the couple's home passed to the claimant as surviving joint tenant. Arlene asserts she did not intend to become a joint obligor on the note and claims to be only the holder of the note, for which the estate is liable. For the reasons we set out below, we conclude

the trial court erred in denying Arlene's claim and hold that her claim should have been allowed in the amount of $7,000.

■ This issue, although factually distinguishable from the next claims we address infra due to Arlene being the holder of the note as well as its co-maker, we find legally indistinguishable from Arlene's other claims against the estate. Thus all should be governed by the same principles. This conclusion is in part based on the language of § 597.4, The Code:

"A conveyance, transfer or lien, executed by either husband or wife to or in favor of the other, shall be valid to the same extent as between other persons."

From this statute we infer a legislative intent that commercial dealings between spouses shall be given no different treatment than those between other parties. The fact that Arlene is the holder of the $14,000 promissory note should not be a relevant consideration.

■ In one of their arguments, the executors urge us to deny Arlene any recovery on the note on grounds that such would constitute unjust enrichment to her. The executors assert that to allow recovery on the note when Arlene already possesses the collateral, having taken the home as surviving joint tenant, would in effect amount to a double recovery. We fail to perceive how any recovery by Arlene could be unjust. It is true that she did take the property which was used to secure the promissory note, but she did not do so by instituting suit on the note, but took as surviving joint tenant by operation of law entirely separate from the note and mortgage. Hence, she has recovered nothing on the promissory note and has received no return on the $14,000 which had come from her own funds. The equitable considerations favor, if anyone, the claimant. Her title to the land securing the promissory note as surviving joint tenant substantially limits the effectiveness of the mortgage to insure payment of the debt, but does not vitiate the obligation expressed by the terms of the note. *Iowa Title and Loan Co. v. Clark Bros.*, 213 Iowa

875, 237 N.W. 336, corrected 215 Iowa 929, 247 N.W. 211.

Arlene contends that she did not intend to become a joint obligor under the note, saying that she signed only at the insistence of her husband's attorney. Yet it remains undisputed on the face of the document that she signed as a co-maker with her husband, there being no ambiguity in the instrument itself which would permit the admission of parol evidence to explain the same. The fact that she received no consideration in becoming an obligor by the terms of the note does not prevent the enforcement of the obligation. *Beneficial Finance Co. of Waterloo v. Lamos,* 179 N.W.2d 573 (Iowa 1970); *Bjornsen Construction Co. v. J. A. Whitmer & Sons,* 254 Iowa 888, 119 N.W.2d 801 (1963). In the absence of fraud or like showing, lack of intent on Arlene's part, however lamentable, does not release her from the promissory note's obligation. Cf. *Altman v. Anton,* 91 Iowa 612, 60 N.W. 191.

We come now to a consideration of the merits of the trial court's rulings on Arlene's claims against the estate. Is the estate liable in contribution for one-half of the joint obligation of the deceased and the surviving spouse when the debt is secured by real property, title to which passed to the surviving spouse as joint tenant? This issue is one of first impression in Iowa, and we therefore look to the case law of other jurisdictions.

Counsel for both parties cite from the authorities gathered in the Annotation at 76 A.L.R.2d 1004. The trial court here followed the majority position stated therein and allowed the surviving spouse's claims for contribution as to the remaining balance due on the first note and mortgage and the property taxes payable as of the date of the decedent's death. For the following reasons, we agree with the holding of the trial court and extend its application to Arlene's promissory note.

A substantial number of jurisdictions support both the majority and minority positions. Those courts denying contribution focus on the lack of benefit to the estate, the estate possessing no interest in real estate securing the obligation and the "common burden" ceasing to run from the property to both the estate and the claimant. *Estate of Dolley,* 265 Cal.App.2d 63, 71 Cal. Rptr. 56; *Florio v. Greenspan,* 340 Mass. 642, 165 N.E.2d 753; *In Re Ryan's Estate,* 44 Misc.2d 477, 254 N.Y.S.2d 191; *Gardner v. Waldman,* 83 R.I. 12, 111 A.2d 922; and *Lopez v. Lopez,* 90 So.2d 456 (Fla.). Contribution by the estate was found to be inequitable since the estate had no interest in the encumbered property.

The majority position is based on the mutuality of obligations stemming from the debt rather than the mortgage, the debt continuing to burden the estate after the death of the decedent. This position has been adopted by the states of Wisconsin, Virginia, North Carolina, Indiana, New Jersey, Delaware, Tennessee, Pennsylvania, Connecticut, Maryland and the District of Columbia. For specific citations, see the Annotation at 76 A.L.R.2d 1004, and the later case supplement thereto. Representative of this rationale is the opinion of the Indiana Court of Appeals in *McLochlin v. Miller,* 139 Ind.App. 443, 217 N.E.2d 50 at page 52:

"We find the better dogma to be premised on the theory that contribution is a right which flows from the debt and it is not affiliated with the security. The fact that there is collateral is not consequential. The 'common burden', a term so frequently used in the basic contribution rule, refers to the obligation, not to the collateral.

"A common interest in the land or property which is used to guarantee or secure the joint debt is not an element that should affect the right of contribution."

In accord is the District of Columbia Circuit Court of Appeals in *White v. Parnell,* 130 U.S.App.D.C. 148, 397 F.2d 709 at 710–711:

"The second applicable legal concept, even more elementary than the first, is the severability of the note and the deed.

Decedent, in her lifetime, incurred the obligation as a co-principal on the notes, and we can see no reason why her death should change her liability. The deeds of trust were simply the security; the notes themselves were the primary obligation. Decedent could have been sued on the notes at any time there was a default and, if the property were foreclosed and a deficiency existed, she, and on her death her estate, would have been responsible, along with her husband, for the entire amount of the notes as obligee. The notes on the property will have to be paid by the survivor, and it follows that he is entitled to contribution from the estate of the decedent."

As noted earlier herein, we acknowledge in this jurisdiction the severability of the debt and the mortgage. Consequently we, like the Wisconsin Supreme Court in *In Re Estate of Rosenthal,* 34 Wis.2d 402, 149 N.W.2d 585, 588, feel constrained to adopt the majority position. Such a rule was endorsed as the better view by the author of the Annotation at pp. 1006–1007 of 76 A.L.R.2d:

> "The majority view would seem to be the better one because it affects a compromise in a certain sense, by dividing the burden between the estate of the deceased and the survivor, and also because resulting from the fact that it is the most widely accepted position, it offers the stability of an accepted rule of property."

Also, as noted in 73 Harvard Law Review 425 at p. 427, adoption of the minority position and thus connecting contribution to the benefit derived could ultimately lead to almost impossible factual determinations.

The executors argue that since § 633.278, The Code, provides that one who is specifically devised property takes the property subject to existing encumbrances, a like result should be reached in this case. The statutory situation is distinguishable due to the rationale supporting the majority rule. The testator-devisee relationship does not involve any "common burden" relating to a debt as is the case between the claimant and the estate. The joint obligation stemming from the promissory note sufficiently distinguishes § 633.278 so as to preclude application, even by analogy.

We therefore affirm the rulings of the trial court allowing Arlene's claim for contribution regarding the balance due on the first note and mortgage and the property taxes payable at the time of decedent's death, and hold that the same principle is applicable to Arlene's claim based on the $14,000 note. The ruling of the district court on the $14,000 promissory note must be reversed and the case remanded for further proceedings not inconsistent with this opinion.

■ IV. Finally, the executors appeal from the rulings of the district court regarding the disposition of certain household goods which were either joint gifts to Truman and Arlene or purchased with funds from their joint checking account. The challenge of the executors is grounded in two earlier decisions of this court, *In the Matter of the Estate of Allen,* 239 N.W.2d 163 (Iowa 1976); *Conkey v. Irwin,* 152 Iowa 323, 131 N.W. 57.

*Conkey v. Irwin* stands for the proposition that a presumption of ownership arises from possession. Since the decedent was in possession of the household goods at the time of his death, the executors assert that the trial court erred in not recognizing a presumption of ownership in the decedent.

This case is readily distinguishable from the situation in *Conkey* which involved the claim of a surviving spouse to cattle in the herd managed by the decedent. Here we have household goods of which the decedent had physical possession due only to the separation of the parties. Arlene still had occasional use of the house and continued to pay some of the utility bills. Although a dissolution action was pending, no property settlement had been reached and there is no indication that Arlene had acknowledged the decedent's sole ownership of the goods in question. A separation and pending dissolution naturally leads to some dislocation of property. We find Truman's possession of the household goods at the time of his death to be non-exclusive of Arlene's interest; thus distinguishing *Conkey v. Irwin.*

The other case relied on by the executors, *In the Matter of the Estate of Allen,* holds that joint ownership cannot be inferred solely by the funds for the purchase coming from a joint bank account. More must be shown. See page 169 of 239 N.W.2d. Here other factors were present, such as joint usage and maintenance, on which a finding of joint ownership could have properly been based.

As we find no merit in the contentions of the executors in this regard, we affirm the trial court's disposition of the disputed items of property.

In conclusion, we hold: (1) the trial court did not abuse its discretion in awarding Arlene, the surviving spouse, a support allowance of $200 per month for a period of 12 months; (2) the filing of a notice of appeal does not divest the district court of jurisdiction over matters completely collateral to the subject matter of the appeal; (3) the district court erred in completely denying the claim of Arlene as surviving spouse on the $14,000 promissory note; (4) the surviving joint tenant is entitled to contribution from the estate of the joint obligor regarding (a) the balance due on a note secured by a mortgage on the property passing by joint tenancy, and (b) the property taxes payable on such property at the time of decedent's death; and (5) the trial court did not err in allocating household goods held in joint ownership between the surviving spouse and the estate.

AFFIRMED IN PART, REVERSED IN PART AND REMANDED WITH INSTRUCTIONS.

All Justices concur except McGIVERIN, LeGRAND and UHLENHOPP, JJ., who dissent from Division III.

McGIVERIN, Justice (concurring in part and dissenting in part).

I concur in Divisions I, II and IV of the court's opinion and respectfully dissent from the result reached in Division III.

The court allows Arlene Tollefsrud's claims against the estate for one-half of the $14,000 promissory note, signed by her and the decedent and secured by a second mortgage in her favor on real estate owned by Arlene and decedent as joint tenants. In addition, the court allows her a contribution of one-half the amount of the first mortgage loan and property taxes on the real estate. When Truman Tollefsrud died, Arlene became sole owner of the realty as surviving joint tenant.

Although the majority primarily decides Arlene's entitlement to one-half of the $14,000 promissory note on the basis of equity, I find equitable consideration suggests a contrary result. The recovery of one-half the debt owed plus the collateral itself gives Arlene a windfall. While the note may have protected her financial interest in the $14,000 mortgage payment, the majority extends Arlene the benefits of protecting her financial investment along with recovery of the entire collateral.

I find persuasive the view of those courts that emphasize the lack of benefit to the estate after the surviving joint tenant acquires exclusive ownership of the realty, and the concept that the one, Arlene, receiving the benefits of the property should accept its burdens, the mortgages, and taxes. *Florio v. Greenspan,* 340 Mass. 642, 165 N.E.2d 753, 755 (1960). *See* generally, 76 A.L.R.2d 1004, 1006, 1010–1012. Accordingly, Arlene should be denied contribution from the estate relative to the mortgages and taxes.

LeGRAND and UHLENHOPP, JJ., join in this dissent.