**Lorna M. REMBE, Executor of the Estate of Verna M. Chappell, Deceased, Appellant,**

v.

**Bertha M. STEWART and Bruce Godbersen, Appellees.**

**No. 85–1061.**

Supreme Court of Iowa.

May 21, 1986.

Daniel D. Dykstra and John C. Gray of Eidsmoe, Heidman, Redmond, Fredregill,

Patterson & Schatz, Sioux City, for appellant.

Harry H. Smith and Dennis M. McElwain, Sioux City, for appellees.

Considered by REYNOLDSON, C.J., and HARRIS, CARTER, WOLLE, and LAVORATO, JJ.

HARRIS, Justice.

This appeal invites us, on public policy grounds, to change a longstanding rule concerning property held in joint tenancy. We decline in the belief that any such change should be by statute.

The general rule that a surviving joint tenant takes real property free of the debts of the deceased joint tenant appears to be well-settled, at least in most jurisdictions. *See* 48A C.J.S. *Joint Tenancy* § 3 (1981) ("[O]n the death of a joint tenant the survivor or survivors take the whole estate, free from the claims of the heirs or creditors of the deceased cotenant."); 20 Am.Jur.2d *Cotenancy and Joint Ownership* § 3 (1965). Our cases are in accord with the general rule. *See Frederick v. Shorman*, 259 Iowa 1050, 1060, 147 N.W.2d 478, 484 (1966) ("We agree a joint tenant's creditors can, by proper action brought before the joint tenant's death, reach the interest or title to the property held in joint tenancy. Of course, such interest cannot be reached after the joint tenant's death."); *Wernet v. Jurgensen*, 241 Iowa 833, 837, 43 N.W.2d 194, 197 (1950); *Wood v. Logue*, 167 Iowa 436, 441, 149 N.W. 613, 615 (1914); *see also Estate of Awtry v. Commissioner*, 221 F.2d 749, 753 (8th Cir.1955) (applying Iowa law); Hines, *Real Property Joint Tenancies: Law, Fact, and Fancy*, 51 Iowa L.Rev. 582, 597 (1966) ("[An] advantage of joint tenancy directly attributable to the peculiar operation of the survivorship right is the potentiality for avoiding creditors' claims. Neither unsecured creditors nor secured creditors of a deceased joint tenant can reach the joint tenancy property in the hands of the survivor unless a severance of the tenancy was effected before the debtor joint tenant's demise.").

The plaintiff acknowledges this is the general rule in Iowa but urges us to recognize an exception. She thinks that, when probate assets are insufficient to pay claims made against an estate, property held by a surviving joint tenant should be made available to satisfy them. She thinks our cases indicate a movement toward recognizing such an exception and believes public policy considerations favor it.

The facts here make a poor vehicle for such a change. Plaintiff had been Verna M. Chappell's conservator for many years prior to her death in 1981 and was named as executor of her estate. At the time of her death Verna owned real estate in joint tenancy with her niece, defendant Bertha M. Stewart, pursuant to a warranty deed executed on June 16, 1965. According to an affidavit filed by defendant for inheritance tax purposes, Verna transferred the property to herself and her defendant niece as joint tenants in exchange for defendant's promise to care for Verna:

> [Verna] took me to her lawyer in Ponca, Nebraska, and explained to him that she wanted the property ... to be my sole property since she intended to lean heavily on my husband and [me] for care in her remaining years and this was the only way she could pay us.

After Verna died, defendant Bruce Godbersen purchased the property from Bertha for $26,750.

Verna's gross estate for inheritance tax purposes was set at $28,321.21. Claims, debts, and charges against the estate totaled $19,451.71. The probate assets available to pay them came to only $1,571.21. As a result $17,880.50 remained unpaid. Plaintiff claimed her total expenses as conservator came to $14,040, the largest claim against the estate. Plaintiff then brought this action requesting that the property Verna held in joint tenancy with Bertha be transferred to her as executor "for purposes of payment of claims, debts, and charges...." In the alternative she asked the court to assign the contract between Bertha and defendant Godbersen to the estate for payment of claims. Ruling on a summary judgment motion, the trial court rejected plaintiff's request and this appeal followed.

We deny any trend in our cases deviating from the established rule. Plaintiff points to dicta *In re Estate of Stamets*, 260 Iowa 93, 148 N.W.2d 468 (1967), in which we affirmed a trial court decree requiring a surviving joint tenant of a bank account to pay funeral expenses of the deceased joint tenant. But the provision in the decree merely enforced an agreement. We noted:

> We may observe that Lena offered at the outset of the trial, in the event the ... account were awarded to her, to pay the only claim against decedent's estate of $1665.95 for funeral and burial expense. The decree requires her to do this and to pay the state inheritance tax on what passes to her.

*Id.* at 102, 148 N.W.2d at 474.

We find no cases which bear out plaintiff's belief that the *Stamets* dicta presaged a shift in our established rule. *Petersen v. Carstensen*, 249 N.W.2d 622 (Iowa 1977), like *Stamets* (and unlike the present case), involved a joint tenancy in a bank deposit. We held the deposit belonged to the surviving joint tenant, not the estate of the deceased joint tenant. *Id.* at 625. We did not directly consider whether the property belonging to the surviving tenant could be subject to the claims of the deceased tenant's creditors but our opinion indicates no change in the general rule outlined in our earlier cases.[1]

Plaintiff's strongest contention is based on public policy reasons for changing the rule, though to urge them she has to borrow from facts not her own. She argues that the rule

> presents an opportunity [for a decedent] to defraud the creditors. If a person anticipates that significant claims, charges and debts will be presented in

---

1. Iowa Code section 633.368 (1985) provides for the recovery by the personal representative of an estate of property transferred with intent to defraud creditors. There is no claim of fraud here and the section is not involved in this appeal.

his estate, he can thwart his creditors by putting his property in a joint tenancy prior to his death.

Even if the decedent possessed no fraudulent intent, plaintiff contends, "creditors can be put at an unfair disadvantage because the decedent can transfer property that would otherwise be available to pay the expenses of a decedent's last illness." She argues such a result "is unfair to creditors who advance goods and services on the reasonable expectation that they would be paid out of the assets of the estate."

Plaintiff does not however claim fraud and, as Verna's long-time conservator, is in no position to contend she contributed those services in ignorance of Verna's property interests, or served only because of her mistaken belief that those interests were greater than they proved to be.

Even so she can point to persuasive policy arguments for changing the general rule. One highly respected Iowa commentator appears to agree:

> [The general rule] is particularly harsh on the creditor holding a lien on the property good against only one of the joint tenants. If the debtor tenant is the first to die the lien is lost.
>
> The vulnerability of the creditor whose apparently affluent debtor owns all of his property subject to survivorship rights is a facet of joint tenancy that has generated some concern in recent years. Strangely, laymen seem little aware of this seemingly important attribute of joint tenancy. If the desirability of the joint tenancy form would be only mildly weakened by removing this feature, perhaps, in the interest of fair dealing, creditors with liens should be permitted to follow unexempt joint tenancy property into the hands of the survivor, at least to the extent they could have reached the deceased debtor's interest in the property during his life.

Hines, *supra*, at 597.

Whatever the merits of the proposed change, we fear that, if it were to occur by judicial fiat, the cure might be worse than the disease. Joint tenancies are already fraught with dangerous and often expensive problems and to add to them might not be worth any advantages gained by the change. Experience has clearly taught that even the most careful estate plan is subject to shipwreck upon the treacherous reef of a stray joint tenancy deed. Joint tenancies have multiplied countless problems relating to death taxes in the estates of the unwary. It may be that the policies mentioned would justify the proposed change. But the additional litigation necessary to sort through claims such as this one, and in settling the real estate titles that might be compromised also have to be weighed in the balance.

We think the weighing of these and other conflicting considerations is more appropriate for the legislative than for the judicial process. We decline to change our rule.

AFFIRMED.