In the Matter of the ESTATE OF
Rubie Lodema THOMAS,
Deceased.

David S. THOMAS, Appellant,

v.

Clarence THOMAS, Executor of the
Albert Thomas Estate, Appellee.

No. 88–1806.

Court of Appeals of Iowa.

Jan. 25, 1990.

Marvin V. Colton of Colton Law Office, Albia, for appellant.

Eric J. Palmer of Palmer & Palmer, Oskaloosa, for appellee.

Considered by SCHLEGEL, P.J., and SACKETT and HABHAB, JJ.

HABHAB, Judge.

Appellant, executor of the estate of Rubie Lodema Thomas, appeals the decision of the district court sustaining objections to the final report. We affirm as modified.

Rubie Thomas (Rubie) died testate on December 25, 1979, and was survived by her husband, Albert Thomas (Albert). Albert subsequently elected to take against the will.

Rubie and Albert lived in a house which was owned solely by Rubie (the South Albia property). This property was valued at $7,500 on the probate inventory. Rubie also owned a parcel of real estate on North Eighth Street which was encumbered by a mortgage. This mortgage was listed as security on an automobile loan note with First Iowa State Bank, Albia. Both Rubie and Albert were signatories to the loan agreement. The automobile which was the subject of the note was owned by Albert and Rubie as joint tenants.

Albert lived in the South Albia property until sometime in the spring of 1983. The property was left in a state of disrepair. On September 9, 1983, the appellant petitioned the district court for authority to sell the South Albia property. The district court authorized the sale on September 30, 1983. Appellant, however, did not sell the property until September 1987. During the interval, the house was gutted by vandals, making the property unrentable. When the property was finally sold, it was for only $1,950. The property taxes owed on it were $2,147.08.

The North Eighth Street property was sold under court approval in October 1982 for $8,400. At that time, the executor determined on his own that Albert was entitled to a statutory one-third share of the net proceeds from this sale. The executor, allegedly pursuant to an oral authorization by Albert, used Albert's one-third share to pay off a claim filed by First Iowa State Bank in the estate based upon the automobile loan note. Additionally, $4,306.33 of the proceeds of the sale of the North Eighth Street property were paid to Wanda Thomas, daughter of testator, to reimburse her for cash advancements made to the estate in 1980 for burial expenses.

It was not until April 22, 1988, that the executor filed his final report. By that date, Albert was deceased. Clarence Thomas, executor of Albert's estate, filed objections to the executor's final report. The district court found the appellant to have been negligent in his failure to sell the South Albia property promptly and ordered him to pay $5,000 to the estate as a surcharge. Additionally, the court ordered that the payment to Wanda from the proceeds of the sale of the North Eighth Street property be removed from the expense list. Finally, the court concluded that appellant erred in using Albert's one-third share of the proceeds of the North Eighth Street property sale to pay off the amount due and owing on the First Iowa State Bank note.

I.

■ Since a hearing on objections to a fiduciary's final report is an equitable proceeding, see Iowa Code § 633.33 (1987), our review here is de novo. Iowa R.App.P. 4; *Matter of Estate of Johnson,* 387 N.W.2d 329, 332 (Iowa 1986). While we give consideration to the findings of fact of the trial court, especially when considering the credibility of witnesses, we are not bound by them. Iowa R.App.P. 14(f)(7).

The first issue we consider is whether the district court erred in finding appellant negligent in his handling of the South Albia property and holding him liable for the resulting loss in value of the real estate. In this respect, we note the following findings of the trial court:

On the 30th of September, 1983, an order was entered by Judge Vogel authorizing the sale of said real estate, and the sale could be made either at public auction or by private sale. Nothing further occurred in this estate until the 1st of May, 1986, when a notice of delinquency was filed by the Clerk of Court indicating that the final report and order closing estate were due. Thereafter, on the 1st of July, 1986, an order was entered granting the Executor 60 additional days

subsequent to July 1, 1986, within which to file said reports; on September 4, 1986, an order was entered granting the Executor 120 additional days to close the estate; thereafter, on the 31st of October, 1986, an order was entered granting the Executor 60 days to close the estate; thereafter, on the 2nd of January, 1987, an order was entered granting the Executor 60 additional days to close the estate; thereafter, on the 30th of April, 1987, an order was entered granting the Executor 60 additional days to close the estate; thereafter, on the 26th of June, 1987, an order was entered granting the Executor 60 days additional to close the estate; on the 25th of September, 1987, an order approving sale of real estate was filed authorizing the Executor to sell Lot 11 and Lot 12 in Block 3 in South Albia, City of Albia, Monroe County, to Wanda Thomas, who is the beneficiary under the last Will and Testament of the decedent herein, for the sum of $1,950. Said order further provided that the Executor was authorized to pay the property taxes on said real estate in accordance with the terms of the contract, to bring the abstract of title down to date, and to convey the property by a court officer's deed. The evidence showed that the taxes on the property sold for the sum of $1,950 to Wanda Thomas amounted to the sum of $2,147.08.

Thereafter, on the 1st of November, 1987, a further notice of delinquency was filed by the Clerk of Court, and on the 31st day of December, 1987, an order was entered granting the Executor 60 additional days to close the estate. As indicated above, thereafter, on the 22nd of April, 1988, the final report was filed herein. The final report shows receipts in the sum of $17,431.41. The final report shows disbursements in the amount of $17,581.65, and included therein is the distribution of the share of the estate that was made to Wanda Thomas in the amount of $4,306.33 which was made on the 12th of October, 1982.

The Court finds from the evidence that the Executor did not act with diligence to sell the real estate which is identified as the first parcel on Schedule A of the probate inventory which was valued at the time the inventory was filed in the sum of $7,500. The evidence shows that the house was allowed to sit vacant and it was badly vandalized during the period of time that the Executor took no action to sell the real estate. The Court finds from the evidence received that the Executor should be surcharged in the sum of $5,000 for his failure to act properly with respect to the sale of Lot 11 and Lot 12 in Block 3 in South Albia, City of Albia, Monroe County, Iowa. This property was valued at $7,500 in the probate inventory and at the time that it was sold for the sum of $1,950 there were accumulated real estate taxes owing on the real estate in the sum of $2,147.08. This resulted in a loss on the property of $197.08. While the Court might be justified in surcharging the Executor a total of $7,697.08, that being the difference between the value in the Estate and the loss incurred, the Court will give the Executor the benefit of the doubt that he might have overstated the value of the property by $2,500 at the time the original probate inventory was filed herein. The Court does feel, however, that the evidence clearly shows that a surcharge in the amount of $5,000 for negligence in handling this real estate is certainly justified.

The general rule concerning a fiduciary who retains property of the estate instead of selling it was noted by the Iowa Supreme Court in *In re Estate of Ring*, 132 Iowa 216, 222, 109 N.W. 710, 713 (1906), where the court stated:

Generally speaking, an administrator is not held personally liable where he has acted in good faith and with ordinary care and prudence in the management of an estate, and he is not liable for loss or depreciation in the value of the property in the absence of a showing of bad faith or negligence.

We concur with the trial court's assessment of damages against appellant. As noted by the trial court, the executor failed to take the appropriate steps to either

make the property rentable or to sell it off before its value further deteriorated because of vandalism. As a result of his negligent inaction, an asset of the estate ended up as a liability. We affirm the imposition of $5,000 in surcharges against appellant.

## II.

We next consider the issue of appellant's payment to Wanda from the proceeds of the North Eighth Street property. The district court found this payment to be a distribution of Wanda's share of the estate. We believe this finding was consistent with the accounting in the final report and the testimony at trial.

As it relates to that part of the accounting attached to the final report that concerns the net proceeds from the sale of the Eighth Street Property, the executor reported that Wanda was entitled as her share of the inheritance to two-thirds of those proceeds, or $5,007.16. He reported further that after deducting $783 from her share to pay as an advancement the balance owed the Bank, as discussed in more detail under Division III of this opinion, a draft was issued to her in the amount of $4,306.33.

The trial court challenged this procedure when he asked the following question and received the reply we set forth:

THE COURT: I have got a question. Why was there money distributed as part of the share of the estate back when the house was sold? Why wasn't that put in the estate and distributed under the final report? Was there an order authorizing that distribution?

MR. COLTON (the executor's attorney): There was an order authorizing the sale only.

THE COURT: You didn't get an order authorizing the distribution of the estate at that time?

MR. COLTON: No. The law does require that one-third of the estate should

have been distributed to Albert at that time.

THE COURT: ... I don't understand why she got her money at that time, especially if you didn't have a court order authorizing it.

MR. COLTON: We didn't have the court order authorizing it.

■ The proceeds from the sale were, of course, subject to the debts and charges of the estate. The bequest should not have been paid until an accounting had been filed, with proper notice to all interested parties, showing the financial condition of the estate.

■ Be that as it may, the record shows (Executor's Exhibit 7) that Wanda and her husband paid from their separate funds the decedent's funeral expenses, expenses incurred in the placement of a monument, and a hospital and insurance debt. This amount totaled $4,603.36. The payments of these expenses were necessary for it is clear that the estate at that time was without sufficient funds to meet those obligations.

The trial court was correct in ordering removal of the sum of $4,306.33 paid to Wanda Thomas as a disbursement.[1] The accounting attached to the final report is in error. The executor twice listed, individually and then by lump sum, the expenses and costs paid from the separate funds of the executor and Wanda. The payment to Wanda should not have been listed as a disbursement. This irregularity was directed to our attention by the executor in his brief to this court. Regrettably, the error was not called to the attention of the trial judge for if it had been, a substantial part of this dispute may have been avoided.

Except as modified under Division III, we approve the trial judge's method of accounting. The trial judge determined that after the payment of the $5,000 approved under Division I of this opinion, the total receipts for distribution equal $22,431.41. After removing the $4,306.33 as

1. It appears from the accounting that Wanda and the executor have been otherwise reimbursed for their advance. Since no objection was made to the method utilized by the executor, we approve the same.

previously discussed, the total expenses incurred equal $13,275.32. We make one minor adjustment of $297.03 for unpaid advancements made by the executor and Wanda, thus arriving at a total disbursement of $13,572.35.

### III.

Finally, we consider whether appellant erred in using Albert's one-third share of the proceeds of the North Eighth Street property sale to pay off most of the First Iowa State Bank note. The district court relied upon the Iowa Supreme Court's decision in *Rembe v. Stewart*, 387 N.W.2d 313 (Iowa 1986), in arriving at its conclusion that appellant erred in charging this debt of the estate against Albert's share of the property.

■ The trial court's interpretation of *Rembe* is correct. Under that case, a surviving joint tenant takes property free of any debts of the deceased joint tenant. *Id.* That proposition of law is not seriously disputed.

The appellee argues, and the trial court held, that since Albert and Rubie held their automobile and pickup truck as joint tenants, when Rubie died Albert took title to the two vehicles free of Rubie's debts. Applying the above statement of law to those limited facts, there is merit in that contention.

But here the agreement entered into with the First Iowa State Bank names Rubie and Albert as debtors. As debtors, they jointly and severally granted to the Bank a security interest in a 1974 Mercury automobile and a real estate mortgage. In the body of the instrument is a provision that the debtors jointly and severally promised to pay to the Bank the amount of the loan. The security instrument created a lien on the 1974 Mercury automobile and

since neither party argues to the contrary, we determine for the purposes of this opinion that a lien also existed on the property described in the real estate mortgage which is the North Eighth Street property.

■ When Rubie died, Albert was entitled to possession of both vehicles but, of course, the 1974 Mercury was subject to the Bank's lien.[2] Although he was entitled to possession of the vehicles, he was also jointly and severally liable for the debt.

From our de novo review of the record, the following facts appear. The executor discussed the sale of the North Eighth Street property with Albert. Albert favored the sale since it was at a price in excess of its inventory value and requested the executor to proceed with its completion. The executor did so, and in his accounting, he computed that Albert's one-third share of the net proceeds equaled $2,503.58.

At that time, the amount owed the Bank was $3,204.41. The proceeds from the sale of the property were deposited to the Colton Law Office Trust Account. From that account, a check was made payable to the Bank in an amount equal to Albert's share of the sale, or $2,503.58.[3] The balance due the Bank was paid from estate funds.

■ Although Albert was jointly and severally liable on the debt, we believe that since he paid part of the debt he is entitled to contribution. This doctrine rests on principles of equity and natural justice. *Mailliard v. Heffernen*, 418 N.W.2d 85 (Iowa App.1987). It arises from the equitable consideration that persons subject to a common debt should contribute equally to the discharge of the debt or duty. *Id.* at 86. When one of several joint obligors pays the debt, he or she is entitled to contribution from the other solvent obli-

---

2. Although appellant argues in his brief that the pickup truck is included as security in the financing statement, we do not find it listed as such.

3. We note under Exhibit B that the executor claims a draft was made payable to the Bank

and Albert. However, Executor's Exhibit 6 reveals that the draft was made payable solely to the Bank. As in Wanda's circumstances, we question the wisdom of the executor's manner of distribution of a distributive share.

gors. His or her right is to have contribution. *Id.* at 86. Albert's estate is entitled to contribution.

Nor do we believe that contribution should be denied because Albert was the surviving joint owner of the vehicle that secured the joint debt. The Iowa Supreme Court in *In the Matter of Estate of Tollefsrud,* 275 N.W.2d 412, 419 (Iowa 1979), determined in a case of first impression that an estate is liable in contribution for one-half of the joint obligation of the deceased and the surviving spouse when the debt is secured by real property, title to which passed to the surviving spouse as joint tenant. We see no reason to treat the legal concept of contribution any different under the circumstances here where we have a joint obligation of the decedent and surviving spouse with the debt secured by a vehicle, title to which passed to Albert, the surviving joint tenant, than those circumstances where a joint debt is secured by jointly-owned real property. In this respect, we note the following statement from *Estate of Tollefsrud:*

> We find the better dogma to be premised on the theory that contribution is a right which flows from the debt and is not affiliated with the security. The fact that there is collateral is not consequential. The "common burden," a term so frequently used in the basic contribution rule, refers to the obligation, not to the collateral.
>
> A common interest in the land or property which is used to guarantee or secure the joint debt is not an element that should affect the right of contribution.

*Id.* (*quoting McLochlin v. Miller,* 139 Ind. App. 443, 217 N.E.2d 50, 52 (1966)).

The Iowa Supreme Court further noted in *Estate of Tollefsrud:*

> The second applicable legal concept, even more elementary than the first, is the severability of the note and the deed. Decedent, in her lifetime, incurred the obligation as a co-principal on the notes,

and we can see no reason why her death should change her liability. The deeds of trust were simply the security; the notes themselves were the primary obligation. Decedent could have been sued on the notes at any time there was a default and, if the property were foreclosed and a deficiency existed, she, and on her death her estate, would have been responsible along with her husband, for the entire amount of notes as obligee. The notes on the property will have to be paid by the survivor, and it falls that he is entitled to contribution from the estate of the decedent.

*Id.* at 419–20 (*quoting White v. Parnell,* 130 U.S.App.D.C. 148, 397 F.2d 709, 710–11 (D.C.Cir.1969)).

Consequently, we hold that Albert is entitled to contribution from the estate in the amount of $901.38. In other words, Albert, insofar as his rights under contribution are concerned, is entitled to the difference between his statutory one-third share of the North Eighth Street property's sale proceeds, $2,503.38 (the amount paid by the executor to apply on Albert's alleged debt), and his share of the First Iowa State Bank note of $3,204.41, or $1,602.20.[4] As we noted in *Mailliard:* "The general rule of apportionment in contribution is all co-obligors must contribute equally...." 418 N.W.2d at 87. *See generally* 18 Am.Jur.2d *Contribution,* § 125 at 128–29 (1985). Additionally, of course, Albert is entitled to those other funds which Iowa Code section 633.238 allows as the share of the surviving spouse who elects to take against the will. We, however, are unable to determine from the record before us what, if anything, Albert is due under both section 633.238(2) and section 633.238(3). On remand, the district court will have to make such a determination after an appropriate hearing.

This cause then is remanded to the trial court with directions to enter a ruling consistent with this opinion.

---

4. Albert paid $2,503.38. With his contribution of $901.38, the difference equals the amount owed by him on the debt, or $1,602.20.

AFFIRMED AS MODIFIED AND RE-MANDED WITH DIRECTIONS.

SCHLEGEL, P.J., concurs.

SACKETT, J., dissents.

SACKETT, Judge (dissenting).

I respectfully dissent. I would affirm the trial court.