## IN THE COURT OF APPEALS OF IOWA

No. 18-0258
Filed April 17, 2019

IN THE MATTER OF THE ESTATE OF DAVID L. CHRISTOFFERSEN, Deceased.

KAREN E. CHRISTOFFERSEN,
     Appellant,

vs.

SHIRLEY CHRISTOFFERSEN,
     Appellee.
_____

Appeal from the Iowa District Court for Shelby County, Timothy O'Grady, Judge.

The administrator of an estate appeals a probate order finding she engaged in self-dealing and disapproving an amended report and inventory. **AFFIRMED AS MODIFIED AND REMANDED.**

Thomas J. Anderson of Thomas J. Anderson, P.C., L.L.O., Papillion, Nebraska, for appellant.

James V. McKinney of McKinney Law Offices, PC, Waukee, for appellee.

Considered by Tabor, P.J., and Mullins and Bower, JJ.

**TABOR, Presiding Judge.**

David Christoffersen borrowed $110,962.30 from his sister Shirley Christoffersen during the final four years of his life. After David's death in January 2016, Shirley sought repayment of her loans by making a claim against David's estate, which was administered by his surviving spouse, Karen Christoffersen. Karen did not pay Shirley's claim and moved to amend the report and inventory in several ways. After a hearing, the probate court found Karen engaged in self-dealing under Iowa Code section 633.160 (2017). The court also refused to approve the amended report and inventory, finding Karen was attempting to "reduce the amount of funds in the estate available to pay unsecured claims." Karen appeals the probate ruling.

Because the probate court properly applied the provisions of Iowa Code chapter 633 to Karen's conduct as the administrator of David's estate, we affirm the self-dealing determination. We slightly modify the ruling on the amended report and inventory to allow the correction of genuine inaccuracies in the original report.

## I.     Facts and Prior Proceedings

David and Karen Christoffersen were married for twenty-eight years. Karen had a daughter from a previous relationship. During their marriage, Karen worked as a homemaker. David had a degree in mechanical engineering and handled the family's finances, sharing little information with Karen.

In April 2012, David found himself in a "financial bind" and started borrowing money from his sister Shirley. The first check was for $5000. The second check, dated January 2013, was for $3500. After that, Shirley wrote David personal checks on an almost monthly basis, the last one in September 2015. All told, David

accumulated a debt to his sister in the amount of $101,000. According to Shirley, David regretted borrowing the money, but he promised to pay her back when he sold a warehouse in Atlantic from which he operated a parts-distribution business called Chewit Properties, LLC (Chewit Properties).[1]

Suffering from heart and lung failure, David checked into the hospital in October 2015 and died in January 2016. Both Karen and Shirley visited him daily, and during a conversation in the hospital cafeteria about the couple's troubled finances, Shirley mentioned the loans she'd been making to David. Karen had been unaware of her husband's borrowing.

In the same timeframe, Karen received three default notices from Midstates Bank. In November 2015, Shirley accompanied Karen to meet with the loan officer. Shirley agreed to advance $9217.32 to pay off two of three bank notes on Chewit Properties. She also paid other expenses related to that account in the amounts of $114.98, $255, and $375. With those additional advances, David owed his sister a total of $110,962.30 at the time of his death.

Karen was appointed administrator of David's estate in late January 2016. The original report and inventory valued the gross estate for federal tax purposes at $687,076.08. It valued Chewit Properties at $140,000. In March 2016, Karen sold the Atlantic warehouse for $300,000 and first used those funds to pay the $161,290 mortgage balance on the Chewit property. Shirley testified David intended her unsecured loans be repaid after the Chewit mortgage. But Karen

---

[1] David owned 95% and Karen owned 5% of Chewit Properties. Karen understood the business to involve "importing parts" but "that's the extent of what [she] knew about it." The record shows the Iowa Secretary of State dissolved Chewit Properties for failure to file annual reports.

used the remainder of the sale proceeds to pay off two personal mortgages: (1) the remaining balance of $104,696.35 from a $160,000 mortgage on farm property owned by David and Karen as joint tenants with rights of survivorship; and (2) the $26,000 remaining balance on a $36,000 mortgage for a house in Kimballtown the couple purchased for Karen's daughter.

In September 2016, Shirley filed a claim in probate for the $110,962.30 she loaned her brother David. The estate moved to dismiss the claim as untimely. The court initially dismissed the claim. But Shirley successfully moved to set aside the dismissal.

In September 2017, the estate filed an amended report and inventory.[2] The amendments included designating five acres of property in rural Shelby County as the "homestead"; adding real estate in Osage County, Oklahoma, valued at $6500 to the estate's assets; and decreasing the listed value of some farm machinery from $20,000 to $8000. Most significantly, the amended report included the following addendum concerning Chewit Properties:

E-FILED 2017 SEP 13 9:19 AM SHELBY - CLERK OF DISTRICT COURT

## ADDENDUM

| $117,185.97 | Net sale proceeds | 3/29/16 |
| - 104,696.35 | Midstates loan | 3/30/16 |
| - 25,029.16 | Midstates loan | 3/30/16 |

$ -12,539.54
  X 95% = $-11,912.56

---

[2] Karen obtained new counsel in May 2017.

The amended report valued the gross estate at $529,289.79, a reduction in value of $157,786.29 from the original report.

Karen also filed a "petition for judicial determination of debts and charges and claim for reimbursement of expenses." The petition alleged after paying court costs, other costs of administration, reasonable funeral and burial costs, and a debt for medical assistance, the estate did not have funds to pay other obligations, including Shirley's claim for $110,962.390—which the filing characterized as not having been determined.

Shirley filed a resistance to the amended report and inventory, complaining the description of David's interest in Chewit Properties was inaccurate. Specifically, Shirley contested the deduction of $104,696 for a Midstates loan because it was Karen's personal obligation rather than an estate debt. Shirley also asserted the deduction for the $25,029 Midstates loan was "unrelated to the estate." Overall, Shirley alleged the amendments were a means for Karen "to avoid paying upon a potential judgment against the estate in favor of the claimant."

On December 13, 2017, the probate court heard from Shirley and Karen, as well as a former loan officer from Midstates Bank. Two weeks later, the court issued its order, disapproving the amended report and inventory. The court accepted Shirley's testimony as credible and rejected Karen's recollections as "unreliable." From there, the court found "credible evidence" supporting Shirley's claim for $110,962.30 against the estate.

Critical to this appeal, the court concluded Karen engaged in self-dealing because she "misallocated assets of the estate—the assets of Chewit Properties, L.L.C.—by using those funds to pay off joint personal debts of hers and David's.

When Karen exercised her discretion to pay those mortgages, she improved her own position vis-à-vis general creditors of the [e]state." The court held Karen personally liable to Shirley for Shirley's claim against David's estate. *See* Iowa Code § 633.160. Karen, as administrator of the estate, appeals that ruling.

## II.     Scope and Standards of Review

"We review probate matters tried in equity de novo." *In re Estate of Waterman*, 847 N.W.2d 560, 565 (Iowa 2014). In our de novo review, we "give consideration to the findings of fact of the trial court, especially when considering the credibility of witnesses, [but] we are not bound by them." *In re Estate of Thomas*, 454 N.W.2d 66, 67 (Iowa Ct. App. 1990). To the extent the probate court's decision is based on its interpretation of statutory provisions, we review for the correction of legal error. *Waterman*, 847 N.W.2d at 565. In addition, when we're deciding "[i]f there is a basis in the record for the action of the district court," we look for an abuse of discretion. *In re Estate of Tollefsrud*, 275 N.W.2d 412, 415 (Iowa 1979).

## III.    Analysis

Karen divides her appeal into two issues: (1) whether the probate court mistakenly concluded she was self-dealing; and (2) whether the court should have allowed the estate to amend the inventory. We will address each issue in turn.

### A. Self-dealing

As administrator of David's estate, Karen is a fiduciary. *See* Iowa Code § 633.3(17). As such, she has a duty to act for the estate's benefit. *See Burns v. Nemo*, 105 N.W.2d 217, 220 (Iowa 1960). "Self-dealing" describes a situation where a fiduciary personally profits from transactions between herself and the

estate. *In re Estate of Snapp*, 502 N.W.2d 29, 33 (Iowa Ct. App. 1993). The Iowa probate code prohibits self-dealing by a fiduciary unless the transaction is approved by court order after notice to all interested persons. Iowa Code § 633.155.

Here, the alleged self-dealing involved Karen's use of proceeds remaining from the sale of the Chewit Properties building to pay off two mortgage notes signed by her and David. The probate court emphasized, "Chewit Properties was not a mortgagee on either of the additional mortgages that Karen paid. Chewit Properties was not an obligee on either note that Karen paid." The probate court further found neither note was in default, nor had Midstates Bank made a demand to accelerate the payment terms when Karen chose to pay the outstanding balances with the money left over from selling the Atlantic warehouse.[3] The court decided Karen's discharge of these "personal debts" ran afoul of Iowa Code section 633.177, which allows a fiduciary to pay an encumbrance on an asset of the estate, so long as "the making of such payment shall not increase the share of the distributee entitled to such encumbered assets."

Confronting the probate court's reasoning, Karen insists: "The 'personal debts' that Karen allegedly paid were secured loan paybacks to Midstates, which were the obligations mostly of David, therefore debts of the [e]state." Karen invokes the equitable principle of contribution, citing *Tollefsrud*, for the proposition "a surviving spouse joint obligor under a note is entitled to contribution from the

---

[3] Section 633.435 provides that a personal representative "may pay any valid debts and charges against the estate even though no claim for such debts and charges has been filed, but all such payments made by the personal representative shall be at the personal representative's own peril."

deceased estate because the debt is that of the decedent as well." *See* 275 N.W.2d at 419. From that premise, Karen makes the logical leap that because David owned 95% of Chewit [Properties]—which "took out one loan and got direct benefit of others"—it was "reasonable and equitable that 95% of the debt should be paid back from David or assessed against his share of the value of Chewit [Properties]."

In her appellee's brief, Shirley draws a distinction between the instant facts and *Tollefsrud*, where the surviving spouse used her own funds to pay down a mortgage on property held in joint tenancy with her deceased husband. *Id.* In *Tollefsrud*, our supreme court decided—as a matter of first impression—an estate is liable in contribution for one-half of the joint obligation of the deceased and the surviving spouse when the debt is secured by real property, title to which passed to the surviving spouse as joint tenant. *Id.* at 420. By contrast, Karen did not make payments in excess of her proper share on the Midstates loans and, therefore, had no existing claim for contribution. *See Stewart v. DeMoss*, 590 N.W.2d 545, 547–48 (Iowa 1999) (discussing inchoate nature of right to contribution and holding "until Stewart paid more than his share of the debt . . . , his claim for contribution against Pearson's estate was a contingent claim"). We agree with Shirley that *Tollefsrud* does not support Karen's position.

Karen next cites *Rembe v. Stewart*, 387 N.W.2d 313 (Iowa 1986), for "[t]he general rule that a surviving joint tenant takes real property free of the debts of the deceased joint tenant." She argues "the idea that Shirley would or should have a judgment of a debt of David's that rests on that joint tenancy land, is contrary to *Rembe*." Shirley responds if David's estate had "consisted entirely of the farm

which is in joint tenancy with full rights of survivorship with Karen, then *Rembe* may apply."s But because the estate had sufficient assets to pay Shirley's claim before Karen paid the two mortgages in full, according to Shirley, *Rembe* does not require reversal of the probate court's conclusion on Karen's self-dealing. We again think Shirley has the stronger argument.

Although Karen was entitled to take possession of the real property free of David's debts, she was jointly and severally liable on the mortgage notes for the farmland and the Kimballton property—they were not exclusively debts against David. *Rembe* does not alter her individual obligations. *See Thomas*, 454 N.W.2d at 70 ("As debtors, they jointly and severally granted to the bank a security interest in a 1974 Mercury automobile and a real estate mortgage. . . . Although [the surviving spouse] was entitled to possession of the vehicles, he was also jointly and severally liable for the debt."). And because Karen did not pay the outstanding balance on those debts from her personal funds in excess of her proper share, she was not entitled to the right of contribution from the estate. *Cf. Thomas*, 454 N.W.2d at 71 (surviving spouse was entitled to contribution because he paid part of the decedent's debt for which he was jointly and severally liable).

The probate court correctly applied section 633.350 to find the $140,373 value of Chewit Properties was property of the estate and as such, was "chargeable with the payment of debts and charges of the estate." Likewise, the court correctly applied section 633.117, which allows the administrator to pay an encumbrance on an estate asset, but only "if it appears to be for the best interests of the estate and if the court shall so order." That provision further states: "The making of such payment shall not increase the share of the distributee entitled to

such encumbered assets." Iowa Code § 633.117. The court properly determined Karen, by paying off the two mortgages with the Chewit proceeds without court approval, increased her own share of the distribution at the expense of Shirley's claim. We affirm the probate court's determination of self-dealing.

## B. Amended Report and Inventory

Karen separately critiques the probate court's rejection of the amended report and inventory. First, she contends the amendment was necessary to designate just over five acres of farmland as the couple's homestead—which would be exempt from claims of creditors of the estate. Karen argues she did not waive her homestead rights "by not expressly stating such" on the original report and inventory. *See id.* § 561.13; *see also Waterman*, 847 N.W.2d at 567 (recognizing important public purpose of the homestead protections and construing homestead statute broadly and liberally to favor homestead owners). Second, she contends the original inventory was mistaken in valuing Chewit Properties at $140,373. Third, she contends the Oklahoma property was properly added to the inventory list. Fourth, she advocates for the reduction in the value of the farm machinery in the amended report. Fifth, she mentions a Medicaid lien and Bank of America debt not included in the original inventory. Finally, she flags a pending motion to amend to conform to the evidence not ruled on by the probate court.

Shirley defends the probate court's rejection of the amended report, claiming Karen had no "additional information" to justify filing the supplemental inventory. *See* Iowa Code § 633.364. Shirley argues no credible evidence supports the decrease in valuation of the personal property. But Shirley does not

contend the five acres did not constitute Karen's homestead, nor does Shirley assert the Oklahoma property was not an asset of David's estate.

The probate court properly declined to approve the amended report and inventory in its current form. Karen presented no credible evidence to support reducing the value of Chewit Properties or the machinery. We affirm the disapproval of those amendments. But we remand for the probate court to approve the addition of the homestead description and the addition of the Oklahoma property to the estate's inventory.[4] Those amendments were justified by uncontested evidence presented at the December 13, 2017 hearing.

**AFFIRMED AS MODIFIED AND REMANDED.**

---

[4] We do not have adequate information in our record on the remaining items to decide if they should be included in the amended report and inventory. We leave those issues to the discretion of the probate court on remand.